UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| DON KING PRODUCTIONS, INC.,<br><br>Plaintiff<br><br>v.<br><br>COMITE PARTIDO POPULAR DEMOCRATICO, et al.,<br><br>Defendants | CIVIL NO. 05-1557(HL) |

# ORDER

This matter is before the Court on co-defendant Comité Partido Popular Democrático's ("Comité PPD") Motion for Summary Judgment. (Docket No. 16). Having reviewed the materials submitted by the parties, the Court hereby denies defendant's motion as genuine issues of material fact exist which preclude summary judgment. The reasons for the Court's order are set forth below.

## Background

Plaintiff Don King Productions, Inc., ("DKP") brought suit against co-defendant Comité PPD and others pursuant to Section 705 of the Communications Act of 1934, 47 U.S.C. § 605. (Docket Nos. 1, 31). DKP was the producer and copyright holder of the closed-circuit telecast of the October 2-3, 2004, championship boxing match between Félix "Tito" Trinidad vs. Ricardo Mayorga, including all related preliminary bouts ("the boxing match"). Parties interested in the receipt, transmission and broadcast of the

Civil No. 05-1557                                                                                                           Page -2-

boxing match were legally required to purchase said rights and obtain contractual authorization from DKP.  According to DKP, co-defendant Comité PPD violated Section 705 by intercepting and displaying to their patrons transmission of the boxing match without authorization, causing substantial damage to DKP.

Comité PPD requests summary judgment alleging dismissal is warranted as it: is not a commercial establishment; legally purchased transmission of the event from its cable provider, Centennial Cable TV; exhibited the event privately only to its members and not for political advantage or monetary gain.  (Docket Nos. 16, 25).

## Analysis

### The Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, the Court will grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  A genuine issue exists if there is sufficient evidence supporting the claimed factual dispute to require a choice between the parties' differing versions of the truth at trial. *Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir.1994); *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 841 (1st Cir.1993).  A fact is material only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining if a material

fact is "genuine" the Court does not weigh the facts but, instead, ascertains whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. *See also Leary v. Dalton*, 58 F.3d 748, 751 (1st Cir.1995).

Once a party moves for summary judgment, it bears the initial burden. Specifically, "'a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [evidence] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Crawford-El v. Britton*, 523 U.S. 574, 600 n.22 (1998) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once this threshold is met, the burden shifts to the nonmoving party. The nonmovant may not rest on mere conclusory allegations or wholesale denials. *See* Fed.R.Civ.P. 56(e); *Libertad v. Welch*, 53 F.3d 428, 435 (1st Cir.1995). Instead, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Furthermore, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**The Federal Communications Act**

Section 705 of the Federal Communications Act, 47 U.S.C. § 605(a), provides, where pertinent, that,

> no person receiving, assisting in receiving, transmitting, or
> assisting in transmitting, any interstate or foreign
> communication by wire or radio shall divulge or publish the
> existence, contents, substance, purport, effect, or meaning

> thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney... No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

"The Act prohibits commercial establishments from intercepting and broadcasting to its patrons unauthorized satellite cable programming." *Garden City Boxing Club, Inc. v. Domínguez*, 2006 WL 1517775, *2 (N.D. Ill. May 23, 2006) (citing, *That's Entertainment, Inc. v. J.P.T., Inc.*, 843 F.Supp. 995 (D. Md. 1993)). "When a violation of Section 605(a) has occurred, Section 605(e)(3) grants a private right of action to the aggrieved person or entity." *DirecTV, Inc. v. Schulien*, 401 F.Supp.2d 906, 912 (N.D.Ill. 906) (citing *Int'l Cablevision, Inc. v. Sykes,* 997 F.2d 998, 1007 (2nd Cir. 1993)). The statute also creates a "private viewing" exception, whereby the provisions of Section 605(a) do not apply to individuals under certain circumstances. 47 U.S.C. § 605(b).

In order to prevail, DKP must establish that (1) transmission of the boxing match is classified as an "interstate or foreign communication by radio,"and (2) Comité PPD received and viewed the boxing match without authorization (3) using same for its own benefit. See, e.g., *DirecTV, Inc.*, 401 F.Supp.2d at 912. Section 605(e)(3)(C)(ii) provides for enhanced damages if the Court finds that the violation "was committed willfully and

Civil No. 05-1557                                                                                                  Page -5-

for purposes of direct or indirect commercial advantage or private financial gain."

We note, Comité PPD's reference to the case of *Charter Communications Entertainment I, LLC v. Burdulis*, 367 F.Supp.2d 16, 21 (D. Mass. 2005), which holds that Section 605 proscribes unauthorized interception of radio, not cable, transmissions. The *Charter* Court recognizes that the First Circuit has not yet decided the issue as to whether Section 605 proscribes the theft of cable services transmitted by wire, and that there is a split among the circuit and district courts which have visited the issue. We pause only to restate our own precedent, as laid out in *Century ML-Cable Corp. v. Carrillo Díaz*, 39 F.Supp.2d 121 (D.P.R. 1999), that Section 605 applies to the unauthorized interception of cable programming services, and is thus applicable to this action, and that plaintiff DKP has properly pleaded a claim under Section 605(a).

**A Material Factual Dispute Precludes Summary Judgment**

There is no dispute that Comité PPD ordered, received and displayed transmission of the boxing free of charge at its Sabana Grande facility. There is also no dispute that the boxing match was a pay-per-view satellite broadcast licensed for commercial distribution to DKP, and that Comité PPD did not purchase its transmission from DKP.

Comité PPD alleges that since it paid to obtain transmission of the boxing match from its cable provider, Centennial Cable TV, its free display at the committee was legal since it neither sought nor obtained financial or other benefit, regardless of the number of television sets or persons present, from what was essentially a private viewing amongst

Civil No. 05-1557                                                                                                   Page -6-

committee members.  DKP argues, on the other hand, that the mayor of Sabana Grande, who subscribes the affidavit in support of the motion for summary judgment, benefitted in the political advantage and support obtained by means of displaying the boxing match at the committee shortly before the elections.

DKP further disputes Comité PPD's characterization of the display as a "private viewing" citing its investigator's affidavit that around 150 individuals were present at the committee for the boxing match which was displayed on two 72-inch televisions, with non-members present during the same.  Comité PPD counters, by way of that the match was displayed in a single 20-inch monitor and intended only for viewing by its members.

The Court needs not resolve the question of whether there was commercial gain since this is a determination more pertinent to an enhanced damages award than to liability.  However, the Court takes notice that "private viewing" is defined by statute as "the viewing for private use in an individual's dwelling unit by means of equipment, owned or operated by such individual, capable of receiving satellite cable programming directly from a satellite." 47 U.S.C. § 605(d)(4).

Clearly, there are genuine issues concerning facts which are material to the outcome of this case, among others:  whether the display of the boxing match was a "private viewing" as defined by statute; whether the display was used for benefit or gain; and, whether Comité PPD's display of the boxing match was duly authorized.

Where "reasonable minds could differ as to the import of the evidence," as is the

Civil No. 05-1557                                                                                                  Page -7-

case here, summary judgment is inappropriate.  See, *Anderson*, 477 U.S. at 250.

Drawing, as we must, all justifiable inferences in favor of plaintiff, these issues must therefore be presented to a jury for final resolution.

      WHEREFORE, the Motion for Summary Judgment (Docket No. 16) is denied.

      IT IS SO ORDERED.

      In San Juan, Puerto Rico, this 31st day of July, 2006.


                                                s/ Héctor M. Laffitte
                                                HECTOR M. LAFFITTE
                                                U.S. DISTRICT JUDGE